UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF LOUISIANA

**************************************************************

UNITED STATES OF AMERICA          Criminal Docket No. 16-050

VS.                               August 17, 2016

HARRY J. MOREL, JR.               Section N

**************************************************************

        **REPORTER'S OFFICIAL TRANSCRIPT OF THE SENTENCING**

            **BEFORE THE HONORABLE KURT D. ENGELHARDT**

                **UNITED STATES DISTRICT JUDGE**

**************************************************************

APPEARANCES:


For the Government:          MR. JAMES STUART BAEHR
                            U.S. Attorney's Office
                            650 Poydras Street
                            Suite 1600
                            New Orleans, LA  70130



For the Defendant:          MR. RALPH CAPITELLI
                            MR. BRIAN J. CAPITELLI
                            Capitelli & Wicker
                            Energy Centre
                            1100 Poydras Street
                            Suite 2950
                            New Orleans, LA  70163


Official Court Reporter:    Lanie M. Smith, RPR, CRR
                            500 Poydras Street, B-275
                            New Orleans, Louisiana 70130
                            (504) 589-7782



        Proceedings reported using computerized stenotype;
transcript produced via computer-aided transcription.

## <u>P R O C E E D I N G S</u>

(Call to order of the court.)

THE COURT:  Good morning.  As you were.

Before we begin, there are no cell phones or electronic devices permitted in this courtroom, even turned off.  Even turned off.  Let me be perfectly clear.  Even turned off, any cell phones or other electronic devices are prohibited from being in the courtroom.

If you have one, you should immediately give it to either the CSO or if you want to step outside and give it in chambers, you can recover it after.  I will promise you that if a cell phone does go off during this proceeding or if I find out that there is a cell phone in the room during this proceeding, it will be a memorable event for the person involved.

THE CSO:  Does anyone else have a cell phone?

THE COURT:  Okay.  All right.  That's the final warning on that.

We have one case on the docket today, *United States of America versus Harry J. Morel, Jr.,* Criminal Action Number 16-50.

Counsel, would you please make your appearance.

MR. BAEHR:  Good morning, Your Honor.  James Baehr on behalf of the United States.

THE COURT:  Good morning.

1    MR. RALPH CAPITELLI:  Good morning, Your Honor.

2  Brian Capitelli and Ralph Capitelli for Harry Morel, who is

3  present in court.

4    THE COURT:  Good morning.

09:01AM  5    All right.  The matter is before the Court for

6  sentencing.  The defendant has pled guilty to Count 1 of the

7  bill of information which charges that from on or about

8  January 1, 2012, through on or about November 29, 2012, in the

9  Eastern District of Louisiana, the defendant,

09:01AM 10  Harry J. Morel, Jr., intentionally harassed Individual "A" and

11  thereby hindered, delayed, prevented and dissuaded

12  Individual "A" from attending and testifying in a federal grand

13  jury proceeding investigating possible wrongdoing by

14  Harry J. Morel, Jr., in his capacity as St. Charles Parish

09:01AM 15  district attorney and assistant district attorney in that

16  Harry J. Morel, Jr., knowing that Individual "A" had evidence

17  that Federal law enforcement authorities sought from

18  Individual "A" -- that is, photographic evidence of meetings

19  Harry J. Morel, Jr., and Individual "A" had concerning various

09:02AM 20  criminal charges against Individual "A" and others -- corruptly

21  instructed Individual "A" to get rid of and destroy evidence

22  and to deny the inappropriate nature of their meetings, all in

23  violation of Title 18, United States Code, Section 1512(d)(1).

24    That is the only count in the bill of information

09:02AM 25  filed in this Court.  And I say, "bill of information."  There

1    is no indictment otherwise filed in this case.

2               Is there any reason why sentence should not be

3    imposed at this time, Counsel?

4               MR. RALPH CAPITELLI:  No, Your Honor.

09:02AM  5        MR. BAEHR:  No, Your Honor.

6          THE COURT:  All right.  I'd like to first note for the

7    record that the Court has received and carefully reviewed and

8    taken into account numerous letters -- indeed, a whole binder

9    full of letters -- about this defendant and this proceeding.

09:03AM 10   Most are submitted in support of the defendant, including

11   several by the defendant's family members, close friends and

12   former colleagues and/or classmates, as well as various members

13   of the community.  There are a few letters, however, that are

14   adverse to the defendant and urge a higher, rather than a lower

09:03AM 15   sentence, including those from a woman and her father alleging

16   that she, too, was a victim of sexual misconduct by the

17   defendant.

18               The Court notes further that the statutory

19   maximum for the crime charged in this case in the bill of

09:03AM 20   information is three years.  The Court cannot exceed three

21   years by law even if there was no plea agreement in this case

22   and the defendant was convicted after a trial on the merits.

23               The Court has also received a letter from the

24   investigating FBI agent Michael Zummer in which he describes

09:03AM 25   the manner in which the Department of Justice brought charges

1   in this case or did not bring charges in this case with regard

2   to the prosecution of this matter.  In that regard, I also have

3   received yesterday afternoon a letter from U.S. Attorney

4   Kenneth Polite seeking to assert privilege over various aspects

09:04AM  5   of Mr. Zummer's letter.

6           I will state forthrightly at this time that I

7   will afford the government the opportunity, within seven days

8   of today, to file a brief with regard to the assertions of

9   privilege which U.S. Attorney Polite mentioned.  That will be

09:04AM 10   due on Wednesday of next week.

11          In filing that memorandum, I would ask that the

12   government please identify with particularity those portions of

13   Mr. Zummer's letter that relate to each particular privilege

14   asserted or confidentiality asserted.  So in other words, don't

09:05AM 15   just give me a general brief.  I would like to know -- it's a

16   20-something-page letter, 28-page letter.  I don't think the

17   entirety of it falls within a single privilege, but I would

18   appreciate it if you would identify those passages, either by

19   paragraph or paragraphs, to which each privilege argued

09:05AM 20   applies; and the Court will take that into consideration.  In

21   the meantime, Mr. Zummer's letter will not be made available,

22   nor will Mr. Polite's.

23          MR. RALPH CAPITELLI:  To the defense either,

24   Your Honor?

09:05AM 25          THE COURT:  If you want to file something, that's fine,

1    too.  A week from today.

2              Mr. Polite is asserting the privilege so --

3         MR. RALPH CAPITELLI:  Okay, Your Honor.

4         THE COURT:  -- frankly I'd like to hear from him.  I

09:05AM   5    would understand if the defendant didn't want any of it

6    released; but if the defendant's objection is to the assertions

7    made in the letter, then I don't really see any need for the

8    defendant to file anything.  I'm going to rule on it based on

9    the privileges asserted by the government, not because the

09:06AM  10   defendant doesn't want it released.  I think it's pretty

11   obvious when you read Mr. Zummer's letter why the defendant

12   would not want it released.

13             All right.  In addition to the mentioned letters,

14   the Court has also received and reviewed the government's

09:06AM  15   August 15th, 2016, sentencing memorandum which requests an

16   upward variance from the otherwise applicable imprisonment

17   guideline range as contemplated by the plea agreement entered

18   into by the parties on April 20, 2016, under

19   Rule 11(c)(1)(B) -- not (c)(1)(C) -- (c)(1)(B) of the Federal

09:06AM  20   Rules of Civil Procedure.  I'll speak more about these

21   submissions in a few minutes.

22             All right.  Mr. Morel, you received a copy of the

23   presentence investigation report that was revised on August 5

24   of 2016?

09:06AM  25        THE DEFENDANT:  Yes, sir.

1     THE COURT:  All right.  Mr. Morel, have you had an

2 opportunity to read that report in full prior to today?

3     THE DEFENDANT:  Yes, Your Honor.

4     THE COURT:  Have you had an opportunity to discuss it

09:06AM 5 with your counsel prior to today?

6     THE DEFENDANT:  Yes, Your Honor.

7     THE COURT:  You understand everything in that report,

8 sir?

9     THE DEFENDANT:  Yes, Your Honor.

09:07AM 10     THE COURT:  All right.  Mr. Morel, Rule 32(e)(2)

11 entitles you to have 35 days to review the presentence report

12 prior to the sentencing unless you waive the minimum period of

13 time.

14     Do you need any additional time to review the

09:07AM 15 revised presentence report?

16     THE DEFENDANT:  No, Your Honor.

17     THE COURT:  All right.  Do you waive any additional

18 time afforded to you under law?

19     THE DEFENDANT:  Yes, Your Honor.

09:07AM 20     THE COURT:  I understand the government has raised five

21 objections to the presentence investigation report.  The

22 defendant has not asserted any objections, but did submit a

23 letter requesting a number of clarifications and corrections to

24 the report.

09:07AM 25     Before I begin with those objections, several

1    folks have entered the courtroom since I have begun.  I would

2    ask for those of you who joined us after I said it at

3    9:00 A.M., anybody that has a cell phone in this courtroom --

4    even turned off -- is in violation of the Court's rules.  If

09:08AM  5    you have a cell phone on you right now -- even turned off --

6    you must turn it in to the CSO who's seated in the back by the

7    door or you must leave the courtroom.  If anybody needs to take

8    care of that, they need to take care of it right now.

9              All right.  The government's first objection is

09:08AM 10    that a three-level increase pursuant to US Sentencing

11    Guidelines Section 2J1.2(b)(2) for substantial interference

12    with the administration of justice was not applied to the

13    defendant's guideline calculation.  The government argues the

14    defendant's interference in state prosecutions as the basis for

09:08AM 15    this enhancement.

16              It is ordered that this objection is overruled.

17    The obstruction of justice offense charged in the bill of

18    information in this matter is premised upon the defendant's

19    obstruction of the federal grand jury -- I should say

09:08AM 20    obstruction of the U.S. Attorney's Office investigation of his

21    conduct, not his prior interference with state court

22    proceedings involving Individual "A".

23              The government's second objection is that a

24    two-level increase pursuant to Sentencing Guideline

09:09AM 25    Section 2J1.2 subsection (b)(3) for selection of an object to

destroy was not applied to the defendant's guideline calculation.

It is ordered that this objection is sustained. Although the original memory card was not actually destroyed, the defendant had selected it for destruction. Further, although the card held by the defendant actually was a copy with the original being held by the government, the defendant was not aware of that information; thus, if the government had not taken the precaution of having a copy made, the defendant would have sought to destroy and had every intention of destroying the original.

The government's third objection is that a three-level increase pursuant to Sentencing Guideline Section 3A1.1 subsection (a) for selection of a victim because of gender was not applied to the defendant's guideline calculation. The government argues the defendant selected Individual "A" because of her gender.

It is ordered that this objection is, likewise, overruled. The charged offense in the bill of information is obstruction of justice; and by all indications, the defendant sought to preclude Individual "A" from testifying and turning over physical evidence because she was a witness with knowledge of the federal crime being investigated, not in particular because of her gender at that point.

The government's fourth objection is that a

1  two-level increase pursuant to Sentencing Guideline

2  Section 3A1.1 subsection (b)(1) for a vulnerable victim was not

3  applied to the defendant's guideline calculation.  The

4  government argues that Individual "A" was a vulnerable victim

09:10AM  5  because she was a convicted felon facing criminal charges and

6  community service over which the defendant had or claimed to

7  have authority.

8          It is ordered that the objection is sustained.

9  Because the defendant sought to obstruct a federal grand jury

09:11AM  10  or U.S. Attorney's Office investigation of sexual misconduct

11  directed toward a person during the same time periods in which

12  she had sought his assistance as the district attorney and then

13  assistant district attorney with having pending charges

14  dismissed and an unsatisfied sentence of community service

09:11AM  15  deemed satisfied, by attempting to prevent the same person from

16  testifying about that conduct and by instructing her to destroy

17  physical evidence, a vulnerable victim enhancement in this case

18  is appropriate.

19          The government's fifth objection is that a

09:11AM  20  two-level increase pursuant to Sentencing Guideline

21  Section 3A1.1(b)(2), large number of vulnerable victims --

22  which is the enhancement -- a large number of vulnerable

23  victims was not applied to the defendant's guideline

24  calculation.  The government argues the defendant sexually

09:11AM  25  victimized at least 24 women, other than Individual "A",

between 1986 and 2012.  The Court would note at this point that none of those victims, except for one, is part of the charges brought in this case.  The government argues now that it is relevant conduct, but the government chose not to bring any charges related to any of those victims, save Individual "A".

It is ordered that the objection, based upon the bill of information that the government chose to bring in this case, is overruled.  The instant narrow obstruction of justice charge brought by the Department of Justice against the defendant did not involve the testimony of multiple persons or evidence in their possession.  With respect to the clarifications and corrections requested by the defendant in a letter dated July 22, 2016, the addendum to the PSR indicates that the probation officer conducted an independent investigation of the offense and that the information contested by the defendant is supported by information provided by the government which included witness testimony; thus, the requested clarifications and/or corrections were not made.

Because the items listed by the defendant were not raised as formal objections and because it is not apparent that they impact the guideline calculation in any way, there is no need for the Court to address those items further at this time.

Does either party wish to make any other corrections, alterations, additions or objections at this time?

1      MR. BAEHR:  No, Your Honor.

2      MR. RALPH CAPITELLI:  No, Your Honor.

3      THE COURT:  All right.  There being no other

4  objections, corrections, alterations or additions to the

09:13AM  5  factual statements contained in the PSR, the Court will adopt

6  those statements as its findings of fact except as stated

7  relative to the offense level adjustments for which the Court

8  has sustained several of the government's objections.

9      Regarding the conclusions in the presentence

09:14AM  10  investigation report with respect to the applicable sections of

11  the U.S. Sentencing Guidelines, the Court additionally notes

12  that the government has or will -- or has certainly indicated

13  an intent to file a motion pursuant to Section 3E1.1(b) of the

14  sentencing guidelines requesting that the defendant be allowed

09:14AM  15  a three-level reduction for acceptance of responsibility for

16  the obstruction of justice charge based on the defendant's

17  timely guilty plea to the charge set forth in the bill of

18  information which permitted the government to avoid preparation

19  for trial and allowed the government and the Court to allocate

09:14AM  20  their resources more efficiently.  The Court notes that the

21  three-level reduction is reflected in the presentence

22  investigation report.

23      Not that it will matter to the ultimate sentence

24  given in this case, but the court will grant that motion.

09:14AM  25      All right.  I'm going to go through the

1  guidelines at this point.  What I just mentioned is pertinent

2  to the fact that there is a three-year statutory maximum for

3  this charge and not to end the suspense prematurely, the

4  sentence in this case will be a term of three years, the

09:15AM 5  statutory maximum; and I will get to that shortly.

6         All right.  Mr. Capitelli, have you got any

7  argument regarding the guideline calculation in particular?

8         MR. RALPH CAPITELLI:  No, Your Honor.

9         THE COURT:  All right.  With the rulings that the Court

09:15AM 10  has made concerning the government's objections and taking into

11  account the advisory provisions of the U.S. Sentencing

12  Guidelines, the Court finds that the applicable guidelines in

13  this case are calculated based upon a total offense level of

14  17, a criminal history category of I, which under the

09:15AM 15  guidelines would call for a sentence of 24 to 30 months

16  imprisonment; probation would not be available; supervised

17  release of not more than one year; a 5,000 to $50,000 fine,

18  plus cost of imprisonment and supervision; a $100 special

19  assessment and based upon the charge brought in the bill of

09:16AM 20  information, there would not be restitution based upon that

21  count.

22         All right.  Mr. Morel, have you anything to say

23  or offer in mitigation of punishment before the Court imposes

24  its sentence?  I will allow either or both you and your counsel

09:16AM 25  to address the Court at this time.  I will also note, yet

again, that I have received and I have personally reviewed all

of the letters that have been submitted.  I received a binder

of letters and then some supplemental letters on your behalf,

Mr. Morel.  I also received letters from the sheriff of

09:16AM  St. Charles Parish, Mr. Greg Champagne; a letter from a

Linda Carter; a letter from the father of Linda Carter.  I

mentioned the letter from Special Agent Zummer and

U.S. Attorney Polite.  I also received an e-mail letter just

recently from Kimberly Pellegrin that is a negative letter with

09:16AM  regard to the sentencing.  So, that is the material I have

personally reviewed in connection with the sentence today.

Mr. Morel, I will allow either or both you and

your attorney to address the Court on your behalf at this time.

THE DEFENDANT:  Your Honor, I want to thank the Court

09:17AM  in this matter; and I also want to apologize for my actions in

this matter.  It's unfortunate that I did what I did.  I'm very

sorry; and, of course, I want to thank my family for the things

that I -- for sticking with me.  It's been tough on them -- as

tough on them as it's been tough on me with the publicity and

09:17AM  everything.  So I want to thank those that wrote the letters,

good friends that stood up for me.  That's basically it.

My lawyers have done a good job and I do

appreciate the Court's time and thank you for reviewing the

letters and the facts.

09:17AM  THE COURT:  Thank you, Mr. Morel.

1     MR. RALPH CAPITELLI:  I have nothing to add other than

2     to say I appreciate the Court's handling of this matter and

3     reviewing those letters, especially because it was our chance

4     to present something favorable, as opposed to the tsunami of

09:18AM  5     bad press that we had to deal with; so I appreciate that.

6          THE COURT:  Thank you, Mr. Capitelli.

7               Mr. Baehr, I'll entertain argument from the

8     government.  It was my understanding that a few people wanted

9     to speak at the sentencing.  Because of the particular charge

09:18AM 10     that was brought and the fact that the bill of information

11     mentions only one crime and an Individual "A", I will allow

12     only -- you've indicated as recently as yesterday that two

13     people wanted to speak.  I do have the letter, and I've

14     reviewed the letter from Ms. Carter.  I understand that

09:18AM 15     Ms. Glover, who is the mother of Ms. Keim, Individual "A",

16     would also like to address the Court; is that correct?

17          MR. BAEHR:  That was our understanding, sir.

18          THE COURT:  Okay.  I will allow her since she is

19     pertinent to the crime that's set forth.

09:19AM 20          MR. BAEHR:  If I could have a moment, Your Honor.

21          UNIDENTIFIED SPEAKER:  She decided not to come,

22     Your Honor.

23          THE COURT:  Okay.  That's fine.  I did have a

24     conference with counsel on Monday to discuss whether or not the

09:19AM 25     Court would have individuals come up and speak either on behalf

1    of the defendant or in opposition to the defendant.  And, quite

2    honestly, that's why I announced the sentence prematurely

3    because having reviewed all the letters, if I listened to one

4    person or five people or a dozen people here today, the

09:19AM  5    sentence would be what it is.  Other than what I'm about to

6    explain in terms of my reasons, there is no mitigation or

7    aggravation that would suggest a sentence other than the one

8    that I have already announced and that I'm going to officially

9    impose.

09:19AM 10         So I thought when I met with counsel on Monday,

11   although I was not prohibiting those from speaking, it's really

12   not necessary at this point given the count that was brought

13   and the guilty plea and the statutory maximum.

14         All right.  This Court has before it -- I'm

09:20AM 15   sorry, Mr. Baehr.  Did you want to make any further comments on

16   behalf of the government?

17         MR. BAEHR:  Yes, Your Honor.

18         THE COURT:  Go ahead.

19         MR. BAEHR:  Your Honor, a prosecutor is a sworn officer

09:20AM 20   of the law.  They are charged with the opportunity to represent

21   the people, to bring charges on behalf of the people, to

22   dismiss charges on behalf of the people, to conduct business on

23   behalf of the people.  Mr. Harry Morel, instead of advancing

24   justice, obstructed it.  He interfered with investigations

09:20AM 25   against him.  He covered up acts that he had committed in the

1  past and he did so in a way that undermines faith in our

2  justice system, in our justice system locally.  And that's why

3  the government has asked for this maximum statutory sentence.

4  We've appreciated that the Court has reviewed those letters

09:20AM  5  that lay out some of what Harry Morel has done over the years

6  as a district attorney, especially Ms. Carter's and her

7  discussion of what happened many years ago and the way that

8  it's impacted her since, that she was a desperate person

9  seeking the assistance of Harry Morel and he took advantage of

09:21AM  10  her.  He took advantage of her desire to get child custody

11  support payments to please himself.

12         His actions have undermined faith in our

13  government, our justice system, in prosecution which impacts

14  all of us; and we would ask that he certainly receive that

09:21AM  15  statutory maximum.

16         THE COURT:  All right.  Thank you, Mr. Baehr.

17         And I will make available to credentialed members

18  of the press -- this was also discussed on Monday.  I'm not

19  going to put in the record the letters that I have received

09:21AM  20  unless counsel instructs me or asks otherwise.  I will make

21  them available in my conference room down the hall if any

22  members of the press would like to see the letters -- with the

23  exception of the Zummer letter and the Polite letter, the

24  letters I've mentioned will be made available, including my

09:22AM  25  binder here.  So if anybody needs to look at those, they'll be

1    available for a short time after we conclude today.

2            The Court has before it a sentencing based only

3    on the crime of obstruction of justice; but this crime, based

4    on the facts of this particular case, is very different.  The

09:22AM   5    defendant in this case is a man who purportedly invested

6    decades of his life in not only abiding by the law, but also

7    seeing that others did so as well.

8            Specifically Mr. Morel served as the duly elected

9    district attorney of St. Charles Parish, Louisiana, for over

09:22AM  10    32 years.  I have, in the past, spoken about the critical role

11    that prosecutors, both state and federal, serve in the fabric

12    of our ordered society.  The public must have absolute trust,

13    the utmost of confidence and unquestionable faith that those

14    charged with prosecuting lawbreakers are beyond reproach.

09:22AM  15    Prosecutors, especially elected district attorneys, must truly

16    be pillars of society.

17            I will state forthrightly what I think should be

18    obvious:  State and federal prosecutors are probably the most

19    important players in maintaining an orderly and civil society

09:23AM  20    in this country.  I say this because only the prosecutor can

21    convene a grand jury; only the prosecutor can subpoena

22    witnesses, documents and other evidence before the grand jury;

23    only the prosecutor -- not the judge or anyone else --

24    determines what charges, if any, should be brought against an

09:23AM  25    individual as well as the timing of those charges which

importantly, as I previously emphasized, determines the

sentencing ranges in terms of the statutory maximum and minimum

sentences that are prescribed by law that are available to the

judge at sentencing.  Only the prosecutor makes offers of

reduced charges, reduced sentences or even no charges

whatsoever or immunity from prosecution based upon the needs

and the interests of law enforcement and the community and

bring, dismiss, forgo or reduce charges.

The prosecutor can also make sentencing

recommendations to the Court.  The prosecutor, whether a

district attorney or U.S. Attorney, controls a vast swath of

decisions that impact society, starting with the arrest and

detention of an individual and recommending what bail, if any,

should be established; thus, the liberty of our individual

citizens is in the hands of the prosecutor.

For this reason we expect prosecutors nationwide

to act in good faith based upon adequately investigated and

solid facts and fair application of the law to those facts in

an impartial, unbiased and unprejudiced manner.

In Louisiana the prosecutors are the district

attorneys who are chosen by the citizenry through the elective

process.  Thus, Louisiana district attorneys, like Mr. Morel,

have an even heightened fiduciary duty to the public and

individual citizens.  The public has every right to expect the

district attorney to conduct him or herself in compliance with

1 the law in good faith, without any personal interest, financial

2 or otherwise, and in a manner that instills the utmost of

3 confidence in the criminal justice system as an institution.

4 This is not too much for the citizens of

5 St. Charles Parish to expect; thus, the Court holds Mr. Morel

6 and others situated in his position of trust as a prosecutor to

7 an even higher standard in determining what the sentence in

8 this case should be.

9 In this federal case instituted by the

10 United States Attorney, the Department of Justice for the

11 Eastern District of Louisiana, Mr. Morel was charged with and

12 pled guilty on April 20, 2016, to one count of obstruction of

13 justice in violation of Section 1512(d)(1) of Title 18.  Based

14 on a plea agreement reached by him with the assistance of his

15 counsel and the U.S. Attorney's Office for this district

16 pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal

17 Procedure.

18 In accordance with the Federal Rules,

19 specifically Rule 11(c)(1), the Court did not participate in

20 any way in plea negotiations or in determining the offense or

21 offenses to which Mr. Morel would be charged or plead guilty or

22 otherwise.  Those matters are left to the parties to determine

23 in accordance with the law; and though the Court is charged

24 with determining the defendant's sentence after a guilty plea

25 has been entered, that discretion is limited by the applicable

1    statutory maximum and with some offenses sometimes there is a

2    statutory minimum established by Congress.

3            Standing alone and in the absence of any other

4    facts, the charge of obstruction of justice is significant even

09:26AM 5    without an examination of the underlying facts.  Indeed, given

6    a district attorney's role in bringing about justice, the very

7    idea -- the very idea -- of a district attorney obstructing

8    justice would on its face justify a sentence of at least three

9    years or 36 months, which is the maximum sentence allowed here

09:27AM 10   by statute.

11           A consideration of the underlying facts served

12   only to aggravate the situation further in that Mr. Morel was

13   purportedly seeking to gain private personal advantage and

14   gratification from those involved in and subject to the very

09:27AM 15   criminal justice system in which he operated and, to a very

16   large degree, controlled.

17           Mr. Morel repeatedly took advantage of his vastly

18   superior position of control and power against those over whom

19   he, in his prosecutorial discretion, could reward or punish to

09:27AM 20   serve himself.  Even worse, when this was discovered, Mr. Morel

21   further sought to intimidate his victim, in this case, into

22   destroying incriminating evidence of his wrongdoing.

23           Thus, although the Court has received a thick

24   binder of letters in support of Mr. Morel's many positive

09:28AM 25   qualities and accomplishments and has carefully considered each

1   and every one of them, determining the sentence in this case,

2   given the single charge of obstruction of justice that is

3   presented to the Court by the Department of Justice, is not

4   difficult.  Indeed it is difficult to imagine justification of

09:28AM  5   a sentence of less than the three-year statutory maximum under

6   the circumstances presented here.

7       For those of you who may think that Mr. Morel

8   deserves a harsher sentence for his conduct, I must again

9   remind you that the federal judges' sentencing determination is

09:28AM  10  limited by and to the charge or charges brought by the

11  government -- by the Department of Justice -- that is, the

12  United States attorney for the district -- and the statutory

13  sentencing maximums or minimums established by Congress

14  relative to those statutory charges.

09:28AM  15      Thus, in this instance, any inquiries or

16  complaints about the offense charged or that the maximum

17  sentence imposed today is just too low should be directed to

18  those decision-makers and their discretion, not the judiciary.

19      Indeed, even if the Court had refused to accept

09:29AM  20  the defendant's guilty plea and insisted that a trial by jury

21  be held in this case, only the offense charged by the

22  prosecutor, the Department of Justice, would be tried; and if a

23  guilty verdict were reached, the maximum sentence that the

24  Court would have the legal authority to impose would be three

09:29AM  25  years or 36 months.

1          Pursuant to the Sentencing Reform Act of 1984, as

2     interpreted and as modified in Supreme Court decisions in

3     *Booker* and *Fanfan,* it's ordered that the defendant,

4     Harry J. Morel, be committed to the custody of the Bureau of

09:29AM  5     Prisons to be imprisoned for a term of three years or

6     36 months.

7          In determining the defendant's sentence, the

8     Court has carefully considered, pursuant to Section 3553(a)(4)

9     of Title 18, the sentencing range under the U.S. Sentencing

09:30AM 10     Guidelines applicable here; the maximum sentence provided by

11     law; the other statutory concerns found in Section 3553(a); the

12     government's upward variance requests submitted in furtherance

13     of the party's plea agreement; all of the letters and

14     statements submitted, both in favor of or adverse to Mr. Morel

09:30AM 15     and the statements made here today by counsel and by the

16     defendant.

17          As previously indicated, the Court finds that the

18     sentence imposed reflects the nature and specific circumstances

19     of the offense to which the defendant was charged and pled

09:30AM 20     guilty; the seriousness of this offense, particularly given the

21     defendant's status as a prosecutor for the State of Louisiana

22     and all other relevant facts and circumstances.  This sentence

23     promotes respect for the law, provides just punishment for the

24     crime charged, affords adequate deterrence and protects the

09:30AM 25     public.

1    Given the guideline range calculations, this

2    sentence represents an upward variance as requested by the

3    government in its sentencing memorandum and as recommended by

4    the government in the plea agreement reached with the defendant

09:31AM  5    and the Department of Justice.  The Court finds the upward

6    variance warranted for the reasons I have previously stated.

7    It's further ordered that the defendant pay a

8    fine of $20,000.

9    It's further ordered that the defendant shall pay

09:31AM  10   to the United States a special assessment in the amount of $100

11   which shall be due immediately.

12   It's further ordered that upon release from

13   imprisonment, the defendant shall be placed on the maximum

14   supervised release term of one year.  Within 72 hours of

09:31AM  15   release from the custody of the Bureau of Prisons, the

16   defendant shall report to the probation office in the district

17   to which the defendant is released.

18   While on supervised release, defendant shall not

19   commit another federal, state or local crime; shall not possess

09:31AM  20   a firearm and shall comply with the mandatory conditions

21   required under Section 3583 of Title 18 and Section 5B1.3 of

22   the U.S. Sentencing Guidelines as well as the standard

23   conditions that have been adopted by this Court.

24   In addition, the following special conditions are

09:32AM  25   imposed:  First, the defendant shall participate in the

orientation and life skills program as directed by the
probation officer.

Second, the defendant shall pay the $100 special
assessment imposed by this judgment if it remains unpaid at the
commencement of his term of supervised release.

Third, the defendant shall pay the fine imposed
by this judgment if it remains unpaid at the commencement of
the term of supervised release.

Fourth, the defendant shall provide complete
access to financial information, including disclosure of all
business and personal finances, to the U.S. probation officer
so long as either the fine or the special assessment remain
unpaid.

And, fifth, the defendant shall not apply for,
solicit or incur any further debt including but not limited to
loans, lines of credit or credit card charges either as a
principal or co-signer or as an individual or through any
corporate entity without first obtaining written permission
from the US probation officer so long as either the fine or
special assessment remain unpaid.

Failure to comply with any of the mandatory
standard or special conditions of supervised release, including
the requirement that the defendant pay the special assessment
and the fine, may result in revocation of supervised release
and further imprisonment.

1    These conditions, Mr. Morel, are part of your

2 sentence.  They absolutely must be satisfied if you are to

3 remain on supervised release once you are released from prison.

4    Mr. Morel, do you understand the conditions of

09:33AM 5 supervised release?

6    THE DEFENDANT:  Yes, Your Honor.

7    THE COURT:  All right.  Pursuant to Section 3583(f) of

8 Title 18, it's further ordered that the probation officer

9 provide the defendant with a written statement setting forth

09:33AM 10 all of the conditions to which the term of supervised release

11 is subject.

12    It's further ordered that the defendant shall

13 submit to the collection of a DNA sample pursuant to the DNA

14 Analysis Backlog Elimination Act of 2000 as amended by

09:33AM 15 Section 203(b) of the Justice for All Act of 2004.

16    At this time, sir, I wish to advise you that you

17 have the right to appeal your conviction to the extent that

18 right has not been waived by your guilty plea.  I also wish to

19 advise you that you have the right to appeal your sentence

09:34AM 20 under certain circumstances.  The defendant may waive that

21 right as part of a plea agreement, however, and you have

22 entered into an agreement that limits your rights to appeal

23 and/or to contest your sentence through a post-conviction

24 proceeding including but not limited to a proceeding under

09:34AM 25 Title 18, United States Code, Section 2255.

1          Those waivers generally are enforceable; but if

2     you believe the waiver in your case is not, you may present

3     that theory to the Court of Appeals.  With few exceptions, any

4     notice of appeal must be filed within 14 days of the judgment

09:34AM  5     being entered in your case.

6          If you're unable to afford the services of an

7     attorney to handle your appeal, one will be appointed for that

8     purpose; and if you cannot afford it, a transcript of the

9     record in this case will be prepared for your appeal at the

09:34AM 10     expense of the government.

11          Mr. Baehr, does the government have anything

12     further at this time?

13          MR. BAEHR:  No, Your Honor.

14          THE COURT:  The Court will recommend to the Bureau of

09:35AM 15     Prisons that, if possible, the defendant be placed at a

16     facility that can accommodate his medical needs as set forth in

17     the presentence investigation report.  The Court will also

18     recommend to the Bureau of Prisons that, if possible, the

19     defendant be placed at a facility in the State of Louisiana.

09:35AM 20          Mr. Capitelli?

21          MR. RALPH CAPITELLI:  If I could, Judge, the large

22     number of letters, mostly family letters, it actually turns out

23     easier if they do get Pensacola -- FPC Pensacola.  They don't

24     necessarily have to follow that, but I would ask the Court for

09:35AM 25     a recommendation to FPC Pensacola.

1        THE COURT:  Well, actually I'll go ahead and not make a

2  recommendation as to the location and the BOP can make that

3  decision without any recommendation either here or there.

4        MR. RALPH CAPITELLI:  Okay.

09:35AM  5        THE COURT:  All right.  Mr. Baehr, I'm advised that the

6  defendant is in compliance with the bond that was previously

7  set and that was held over pending sentencing.  Does the

8  government have a position with regard to the continuation of

9  that bond in terms of his reporting date?

09:36AM 10        MR. BAEHR:  We'd request detention, Your Honor.

11        THE COURT:  Detention starting today?

12        MR. BAEHR:  As soon as the Court sees that it's

13  appropriate.

14        THE COURT:  All right.

09:36AM 15        MR. RALPH CAPITELLI:  Your Honor, we ask for

16  self-surrender.

17        THE COURT:  The defendant is in compliance.  I do have

18  the release status report here from pretrial services which

19  recommends that the defendant be continued on the existing bond

09:36AM 20  and allowed to self-surrender, which is the customary practice

21  with regard to these types of offenses.  Again, it's an

22  obstruction of justice offense.

23        Given the gravity of that offense and the fact

24  that he's pled guilty to that offense and is in compliance with

09:36AM 25  all of the bond requirements, the Court is going to allow the

defendant to self-surrender.  The defendant shall surrender
himself to the custody of the Bureau of Prisons to the assigned
facility at the designated institution of the BOP on or before
September 26, 2016, at noon.

        Mr. Morel, the conditions of the bond that was
previously set are to remain in place and you are to remain in
compliance with the conditions of the bond pending your
reporting date.  If at any point in time you are not in
compliance with that bond, the government may move to increase
the terms of that bond or move to revoke the bond in its
entirety and have you incarcerated prior to the reporting date.
Do you understand that?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  All right.

        Counsel, is there anything further?

        MR. RALPH CAPITELLI:  No, Your Honor.

        MR. BRIAN CAPITELLI:  No, Your Honor.

        THE COURT:  All right.  Thank you, all.

        Let's go ahead and sign that form there, and I'll
sign off on it.

        THE DEFENDANT:  (Complying with the Court's request.)

        MR. RALPH CAPITELLI:  Thank you, Your Honor.

        THE COURT:  All right.  The Court will be adjourned.

        THE COURTROOM MANAGER:  All rise.

        (WHEREUPON, the proceedings were adjourned.)

* * * *

REPORTER'S CERTIFICATE

        I, Lanie M. Smith, CRR, RPR, Official Court Reporter, United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

                              /s/ Lanie M. Smith
                              Official Court Reporter